```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
                      CAMDEN VICINAGE
```

|  |  |
|---|---|
| IRENEUSZ ZIEMKIEWICZ, : | |
| : | Civil Action No. |
| Plaintiff, : | 12-1923 (RMB/AMD) |
| : | |
| v.    : | |
| : | **OPINION** |
| R+L CARRIERS, INC. et al., : | |
| : | |
| Defendants. : | |

Appearances:

Timothy P. Creech, Esquire
Dominik Rostocki, Esquire
Creech Law, L.L.C.
1818 Market Street, 30th Floor
Philadelphia, Pennsylvania 19103

    Attorneys for Plaintiff

Peter J. Boyer, Esquire
Hyland Levin, LLP
6000 Sagemore Drive, Suite 6301
Marlton, New Jersey 08053-3900

    Attorney for Defendants

**BUMB**, United States District Judge

    This matter comes before the Court upon its own motion. Pursuant to an Order dated January 18, 2013, [Docket No. 51], the Court entered an Order directing the Plaintiff to show cause, upon pain of dismissal or transfer, (1) why this case should not

be dismissed for lack of subject matter jurisdiction, (2) why venue is proper in this district, and (3) why this case should not be <u>sua sponte</u> transferred to the appropriate district pursuant to 28 U.S.C. § 1404(a).  The parties have responded to the Court's Order.  <u>See</u> Docket Entry Nos. 54 and 55.  Both parties agree that this Court has subject matter jurisdiction[1] and that venue is proper.[2]  Plaintiff, however, disagrees that this matter should be transferred to any other judicial district.

According to the First Amended Complaint, the Plaintiff, Ireneusz Ziemkiewicz ("Plaintiff"), is a citizen of Shippensburg, Pennsylvania.[3]  First Amended Complaint ("Complt.") ¶ 6. Plaintiff has brought suit against the defendants R+L Carriers, Inc., an Ohio corporation, and R+L Carriers, Shared Services,

---

[1] The Court is satisfied from a review of the parties' submissions that subject matter jurisdiction is proper here.

[2] Where, as here, defendants waive any objection that venue is improper, it is inappropriate to *sua sponte* dismiss or transfer based on improper venue under 28 U.S.C. § 1406(a) absent extraordinary circumstances.  <u>Gardner v. McArdle</u>, 461 F. App'x 64, 66 (2d Cir. 2012)(affirming vitality of <u>Concession Consultants, Inc. v. Mirisch</u>, 355 F.2d 369, 371 (2d Cir. 1966)("Since the right to attack venue is personal to the parties and waivable at will, a district judge should not, in the absence of extraordinary circumstances, impose his choice of forum upon the parties by deciding on his own motion that there was a lack of proper venue.")); <u>Sadnt v. Luke</u>, No. 03-4379, 2004 WL 248627, at *2 (E.D. Pa. Nov. 2, 2004). Because no extraordinary circumstances are present here, this Court declines to *sua sponte* dismiss or transfer based on improper venue under 28 U.S.C. § 1406(a).

[3] Shippensburg, Pennsylvania is located within the Middle District of Pennsylvania.

2

LLC, an Ohio limited liability company (collectively "R+L"), both with their principal places of business in Wilmington, Ohio. Complt. ¶ 7.

Plaintiff, a former truck driver for R+L, alleges that R+L defamed him and unlawfully interfered with contractual relations and prospective economic advantages with prospective employers by falsely informing such companies that Plaintiff had refused a drug test while employed at R+L.  The Complaint  alleges that R+L published false statements to "numerous entities" and specifies four employers by name: (1) NFI Carriers located in Cherry Hill, New Jersey; (2) Black Horse Carriers located in Carol Stream, Illinois; (3) UPS, with no specified location; and (4) Vitran, with no specified location.  Plaintiff's submission to the Court, however, states that the defamatory publication to Vitran affected his employment at Vitran's Hagerstown, Maryland, branch. [Plaintiff's Response, at 9, Docket No. 54] Plaintiff's Response also states that Plaintiff applied for employment with Neiss Brothers, Coca Cola, Chapter 70, and Pepsi, all in Maryland. Id. In addition, in its discovery papers, Plaintiff requests admissions from R+L that R+L published Plaintiff's refusal to take a drug test to Aerotek, Inc., Weiss Brothers, Coca Cola, Schneider Trucking Co., Chopper 70 Logistics, LLC, Pepsi Beverage Corporation, Jacobson Companies, and Eichilbergs, Inc., although the locations of these companies are not identified.  See

Affidavit of Janet E. Lanyon, at Ex. 4 [Docket No. 55].

**I.   Legal Analysis**

Because this Court has jurisdiction and venue is proper, this Court has the authority to <u>sua sponte</u> transfer this case pursuant to 28 U.S.C. § 1404(a).  <u>Cf</u>. <u>Amica Mutual Insurance Co. v. Fogel</u>, 656 F. 3d 167, 180 (3d Cir. 2011).  <u>See</u> <u>also</u> <u>Meyers v. Heffernan</u>, 2012 WL 1133732, at *5 (D.Del. 2012)("A Court's authority to transfer cases pursuant to 28 U.S.C. § 1404(a) does not depend upon a motion, stipulation, or consent of parties to the litigation. . . .")  Plaintiff's argument that <u>sua sponte</u> transfer is inappropriate because R+L has not objected to venue is misplaced.  Plaintiff confuses improper venue with transfer of venue.  <u>See</u> <u>Lafferty v. Gito St. Riel</u>, 495 F. 3d 72 (3d Cir. 2007).  ("Distinctions between §§ 1404(a) and 1406(a) have to do with discretion, jurisdiction, and choice of law.  Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the Court has jurisdiction and that the case has been brought in the correct forum.  . . . In those instances, district courts are required to either to dismiss or transfer to a proper forum.").

Section 1404(a) of Title 28 of the United States Code provides that an action may be transferred "for the convenience of the parties and witnesses, in the interest of justice [to] . . . any other district . . . where it might have been brought."

4

The decision to transfer under § 1404(a) is entirely within the discretion of the district court and involves an individualized, fact-intensive consideration of all the relevant factors. See Stewart Or., Inc. v. Ricoh Corp., 487 U.S. 22, 23 (1988). "A determination that transfer to another jurisdiction is appropriate represents an 'exercise[ ] of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and the court should a particular action be litigated in one forum rather than another.'" Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999) (internal citations omitted). The district court "is vested with a large discretion" to determine when transfer should be ordered "for the convenience of parties and witnesses, in the interest of justice." Solomon v. Continental Amer. Life Ins., 472 F.2d 1043, 1045 (3d Cir. 1973) (internal quotations and citations omitted).

In deciding a transfer motion, the Court must first determine whether the alternate venue is one in which the case "might have been brought." 28 U.S.C. § 1404(a). Here, the parties do not dispute that this action could have been filed in the District of Maryland or the Southern District of Ohio, the two judicial districts that seem the most suitable for transfer.

Next, the Court must consider the public and private factors relevant to a section 1404(a) transfer inquiry. The private interests include: (1) the plaintiff's forum preference; (2) the

5

defendant's forum preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent they may be unavailable for trial in one of the fora; and (6) the location of books and records.  <u>Jumara v. State Farm Insurance Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995); <u>Danka Funding, LLC v. Page, Scranton, Sprouse, Tucker & Ford, P.C.</u>, 21 F. Supp. 2d 465, 474 (D.N.J. 1998).  The public interests include: (1) the enforceability of the judgment; (2) practical considerations in making the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  <u>Id</u>.

**A.   Private Interests**

1.   <u>The plaintiff's forum preference</u>

Where the plaintiff has chosen a correct forum that is the forum of the plaintiff's residence, the plaintiff's choice should not be lightly disturbed.  Here, the choice of forum is not the same as Plaintiff's residence, however, and so Plaintiff's choice is given lesser deference.  <u>See</u>, <u>e.g.</u>, <u>Lony v. E.I. DuPont de Nemours & Co.</u>, 886 F.2d 628, 633 (3d Cir. 1989)  Moreover, where much of the conduct that Plaintiff complained of did not occur in

Plaintiff's chosen forum, as is the case here, Plaintiff's choice is entitled to less deference.  See Bartolacci v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints, 476 F. Supp. 381, 383 (E.D.Pa. 1979)  Here, the only connection to New Jersey is the alleged single contact between R+L and NFI, a prospective employer, in New Jersey.  These circumstances diminish the deference given to Plaintiff's choice of forum.

   2.  The Defendant's preference

Ohio presents a more convenient location for R+L because its headquarters and principal place of business are in Wilmington, Ohio.  R+L also has an office in Hagerstown, Maryland, where many of the events giving rise to this action occurred, as discussed below.  This factor weighs in favor of transfer first to Ohio, and second to Maryland.

   3.  Where the claim arose

The Complaint alleges that most of the conduct alleged by Plaintiff occurred in Maryland and Ohio.  Much of the Complaint, as well as written discovery presented to the Court, focus on the conduct of Charles Stefaniak, Plaintiff's supervisor, who was the Service Center Manager in Hagerstown, Maryland.[4]  Plaintiff alleges that Stefaniak had a personal animus against him and on June 27, 2011, Stefaniak called Plaintiff into his office to cite

---

[4] Conspicuously absent from the Complaint is the location of where these events occurred.  The parties' submissions clarified that they occurred at R+L's Hagerstown, Maryland terminal.

7

Plaintiff for damage he purportedly caused to freight during a shipment.  The Complaint details the events of that day and alleges that Stefaniak falsely reported to R+L that Plaintiff was selected for drug screening that day, but refused the test.  Plaintiff alleges that Defendants failed to comply with federal regulations because they did not inform him that he was selected for random drug screening, and Stefaniak never completed the proper forms or instruction.  Moreover, Plaintiff alleges, Stefaniak falsely stated to R+L that he (Stefaniak) had told Plaintiff that he was to be drug tested, and then Plaintiff resigned. Complt. ¶ 59.  The Complaint details further false statements allegedly made by Stefaniak that occurred that day. Complt. ¶ 66.  Based on this allegedly false information, Defendants allegedly falsely reported to numerous prospective employers that Plaintiff refused a drug test.

   The Complaint also avers that R+L and its management failed to comply with federal drug testing and employment requirements and that several of its employees in Ohio willfully and/or recklessly relied upon Stefaniak's version of events.  The Complaint alleges that Plaintiff had numerous contacts with various R+L employees in Ohio in attempting to resolve the matter.  It further alleges that R+L "disregarded the patent inconsistencies and falsehoods of agents' and employees' accounts [including Stefaniak's] of [Plaintiff's] alleged refusal to

test." Complt. ¶ 76.  As a result, Plaintiff suffered harm.

The only conduct alleged in New Jersey was a single contact by R+L to NFI.  Complt. ¶ 75.  The only alleged conduct in Illinois was a single contact by R+L to Black Horse Carriers.  Complt. ¶ 76.

Thus, it is clear from the Complaint that the events giving rise to the claims here almost all germinated in Maryland where Stefaniak and Plaintiff worked together.  The conduct of other R+L employees stemmed from information provided by Stefaniak.  This factor weighs in favor of transfer to Maryland.

4. <u>The convenience of the parties as indicated by their relative physical and financial condition</u>

In addressing the convenience of the parties factor, Plaintiff does not argue that Maryland would be an inconvenient forum.  In fact, although Plaintiff argues that Baltimore "is almost as far from Plaintiff's home as in Camden," Plaintiff's Response at 9, Baltimore is actually closer to Plaintiff's home than Camden.[5]  As for the convenience of Defendants, Stefaniak, R+L's employee, is in Maryland.  Many of R+L's employees are within its control and could travel to Maryland.  Although Defendants would prefer Ohio, they have not argued to this Court that they would be incapable of shouldering the financial burden

---

[5] According to www.yahoomaps.com, Camden is 148.83 miles from Shippensburg, Pennsylvania; Baltimore is 109.56 miles from Plaintiff's residence.

9

if this matter were litigated in Maryland. This factor weighs in favor of transfer to Maryland.

5. <u>The convenience of the witnesses to the extent they may be unavailable for trial</u>

The Court considers this next factor but only to "the extent that the witnesses may actually be unavailable for trial in one of the fora." <u>Jumara</u>, 55 F.3d at 879 (emphasis added). Party witnesses are not considered part of this analysis because party witnesses are presumed to be willing to testify at trial no matter the inconvenience. <u>Mato v. Window World, Inc.</u>, No. 10-7617, 2011 WL 710473, at *5 (E.D.Pa. Feb. 28, 2011); <u>Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.</u>, No. 09-290, 2009 WL 3055300, at *4 (W.D.Pa. Sept. 21, 2009); <u>Sunds Defibraltor, Inc. v. Durametal Corp.</u>, No. Civ. A. 96-483, 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997). Here, neither party has identified any non-party witness who would be unavailable or unwilling to testify at trial. Therefore, this factor is neutral.

6. <u>The location of books and records</u>

The location of books and records is only material "to the extent that the files could not be produced in the alternative forum." <u>Jumara</u>, 55 F.3d at 879. While it is improper to ignore this factor entirely, it is often irrelevant today because of "recent technological advances" that enable the documents at issue in the litigation to be readily produced in even a distant forum. Here, no party has pointed to any documents that it could

10

not obtain.   Thus, this is a neutral factor.

    **B. <u>Public Interests</u>**

Finally, with respect to the public interest factors, the enforceability of the judgment is not at issue.  As for the practical considerations in making the trial easy, expeditious or expensive, a trial in Camden, New Jersey, makes little sense.  None of the parties are here, and of all the witnesses identified by the parties, only one witness from NFI is in this District.  As for Maryland, however, a trial in Baltimore would be more convenient for Plaintiff.  Plaintiff has already argued that Camden is convenient, and so Baltimore, which is closer for him, is even more convenient.  Although his counsel is not in Baltimore, that factor alone is not enough to avoid the transfer.  While Defendants prefer Ohio, Maryland is not so difficult to try the case because the Defendants have a Hagerstown branch in Maryland and most of the witnesses are R+L employees within the control of R+L.

Further, because almost all of the alleged wrongful conduct occurred outside of New Jersey, save one contact, there is no local interest in having the matter decided here.  The burden of jury duty should therefore not be imposed on New Jersey jurors.  <u>See</u>, <u>e.g.</u>, <u>Ferens v. John Deere Co.</u>, 494 U.S. 516, 529-30 (1990)("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the

litigation.")(internal citation omitted).  A jury in Maryland will decide a case that primarily happened in its district, in Hagerstown, Maryland.

Finally, although this case involves allegations of various communications that may require the application of diverse state laws in addition to New Jersey, this Court and a court in the District of Maryland are equally capable of applying diverse laws.

In sum, the public interest factors support transferring this action to the District of Maryland.

### III. Conclusion

Overall, consideration of the private and public interest factors set forth above weigh in favor of transfer to the District of Maryland.  As such, the instant matter shall be transferred to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a).

                                                 s/Renée Marie Bumb
                                                 RENÉE MARIE BUMB
                                                 United States District Judge

Dated: February 8, 2013